20625

In the Matter of Howard K. WILLIAMSON, Family Court Judge for Aiken County, Respondent.

(242 S. E. (2d) 223)

*Daniel R. McLeod, Atty. Gen.,* and *A. Camden Lewis, Asst. Atty. Gen.,* of Columbia, *for Appellant.*

*John H. Williams,* of Aiken, *for Respondent.*

February 28, 1978.

*Per Curiam:*

The Court is called upon to determine whether a family court judge within the unified court system should be removed or retired from office because of disability.

Inasmuch as this is the first case arising under the new judicial South Carolina Constitutional Amendment, Article V, ratified in 1973, we examine the source of the Court's authority and the duty to rule upon the matter.

Article V, § 1, of the constitution mandates a unified judicial system in verbiage as follows:

"Section 1. The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law."

The family courts of this state are a part of the unified judicial system. See Act No. 690 of the Acts of the General Assembly for 1976, now codified as § 14-21-410, *et seq.,* of the 1976 Code (Supp. 1977).

Section 4, of Article V, makes the Chief Justice, . . . "the administrative head of the unified judicial system."

Section 7, of Article V, empowers the General Assembly to give exclusive jurisdiction to inferior courts. The family courts have been given exclusive jurisdiction by statute in many areas of litigation.

Section 13, of Article V, provides in part as follows:

"Removal or retirement of judges.

"Within the unified court system, the Supreme Court shall have power after hearing, to remove or retire any judge from office upon a finding of disability seriously interfering with the performance of his duties which is, or is likely to become, of a permanent character."

In order to provide for the hearing referred to in § 13, this Court promulgated its Rule 34, entitled "Rule on Judicial Discipline and Standards." The rule created a Judicial Standards Commission and provides for Hearing Masters to receive evidence and make a recommendation to the Commission, which, in turn, makes its report to this Court.

Rule 34, section 1(c) provides:

"A judge shall, after hearing, be removed or retired upon a finding of disability as defined in section 2(j)."

Section 2(j):

" 'Disability' is a condition seriously interfering with the performance of a judge which is, or is likely to become, of a permanent character."

The respondent, Howard K. Williamson, was elected by the General Assembly as one of two resident family court judges for the Second Judicial Circuit. All family court judges are state judges and are subject to assignment by the Chief Justice, under his administrative authority, to serve as family court judges in other circuits and as special assignment judges in the circuit courts or other courts throughout the state.

On September 4, 1977, the respondent entered an Augusta, Georgia, hospital for treatment. As a result of an investigation made by the Executive Secretary of the Board of Commissioners on Judicial Standards, a complaint was filed, charging that "the respondent has an alcohol problem and/or a mental condition which has caused his hospitalization, has caused him to miss scheduled court, and has caused him to appear in public to the embarrassment of his office"—in violation of Section 1 of Rule 34.

The issues came to be heard before the Hearing Masters. The Masters found . . . "that Judge Williamson in substance submitted himself to treatment to Dr. Kenneth Jones, of Augusta, who has diagnosed him as manic depressive illness, manic type, for which he is under treatment at the present time." Notwithstanding this finding, the Masters concluded that he is not "disabled" within the meaning of the rule which would require his suspension or removal from office.

The Commissioner's examiner objected to the Masters' report, as permitted by Section 16, and the case came to be reviewed by the Commissioners, resulting in their report to this Court reversing the Masters. Of the seven members of the Commission, three concluded that the respondent. did have a disability within the meaning of the rule and recommended that this Court issue its order removing or retiring the respondent. One member concluded that the respondent should be suspended without pay for a period not to exceed eight months or . . . "until a competent medical authority can give an unqualified prognosis that the respondent has medical or mental disability that bears upon his conduct—private or official." One member concluded that the respondent should remain under suspension . . . "until competent medical authority can give a definitive prognosis that the respondent has no medical or mental disability . . ." One member voted to sustain the Masters' findings and conclusions without qualification, and one member recommended that . . . "an up-to-date medical report and prognosis should be obtained and if such were favorable to the

respondent, I would sustain the report of the Hearing Masters."

Section 19 of the rule provides that the affirmative vote of five members of the Commission, who have considered the record, is required for a recommendation of discipline, suspension, removal or retirement of a judge for disability. Respondent submits that five members have not reached a common agreement as contemplated by the rule and that the complaint should be dismissed. Section 26 provides: "Nothing in these rules shall be construed to deprive the Supreme Court of the authority to require the certification to it of the record in any case, for such action as it deems proper." Respondent has heretofore been temporarily suspended pending the outcome of this proceeding. Only one member of the Commission recommended reinstatement at this time. Notwithstanding § 19, the ultimate responsibility for making the determination is cast upon this Court by the Constitution, and, accordingly, all issues are properly before this Court.

We now reach the crucial question: Does the respondent have a disability seriously interfering with the performance of his duties which is, or is likely to become, of a permanent character, within the meaning of Article V, § 13? We think he does.

The disability contemplated by the Constitution relates to . . . "his duties . . ." We examine the statute, referred to hereinabove, which created the judicial circuit family courts, to ascertain the powers and duties conferred upon a family court judge. He is a full time judicial officer, requiring basically the same qualifications as a circuit court judge. A family court judge substitutes for a jury and determines both questions of fact and of law. We need not attempt to recite all of the authority and duties conferred upon a family court judge, but they include such important matters as granting of divorces, ruling upon alimony and determining the amount, child custody, child support, division of property,

adoptions, commitment of mentally ill or emotionally disturbed children, and trial of juveniles who have violated the criminal law. Such matters call for the ultimate in judicial discretion. While the respondent may be fully capable of employment in other fields of endeavor, we think that he is disabled within the meaning of the Constitution to perform the judicial work for which he was elected.

There was before the Commission, and before us, the testimony of Dr. Thomas Lattimore, a medical doctor and a general surgeon. The respondent was his friend in addition to being his patient. Dr. Lattimore spoke of erratic behavior on the part of the respondent and diagnosed him as manic depressive.

Dr. Charles W. Jackson, a psychologist (a private practitioner), examined the respondent for the purpose of an evaluation. He was a witness, called by the respondent, and stated that he found . . . "a mild amount of depression and anxiety."

The testimony of Dr. Kenneth Jones, a psychiatric physician, was taken by way of deposition. The respondent was referred to him by Dr. Tom Lattimore in September of 1977. He testified as follows:

"Q. Do you have any prognosis—that is, what is going to happen, or what can we expect from Judge Williamson?

"A. Well, prognosis, I would think the prognosis would be good. As long as—perhaps I ought to qualify this—as long as he stays on the medication; as long as I see him periodically; as long as he doesn't drink. I would think the prognosis would be good under those circumstances.

"Q. In the manic—when he has manic symptoms, does that affect your ability to act normally?

"A. It would affect your judgment.

•   •   •   •   •

"Q. Doctor, he is not an alcoholic, in your opinion?

"A. I have no personal history or evidence to suggest that he is an alcoholic, except by his own words.

. . . . .

"Q. This manic syndrome can be caused by numerous things?

"A. We don't really know what the cause is. It can be precipitated by a lot of things, yes.

"Q. Stress, strain, domestic problems, alcohol, you name it.

"A. A lot of things could probably precipitate manic, yes, sir."

In addition to the hospitalization of September, 1977, the respondent was, at the instigation of Dr. Lattimore, hospitalized and treated by Dr. Julius Johnson, a psychiatrist, from February 2 to February 11, 1976. Dr. Lattimore testified: "He was admitted for essentially the same thing he was admitted for the second time, erratic behavior, mania and depression."

Respondent was also hospitalized in 1971.

We are forced to the conclusion that the respondent's problem is basically a medical one. Manic depressive psychosis has two phases, a manic, or overactive phase, and a depressed phase. The manic phase is characterized by a very sudden change in an individual's mood, speech, and behavior. One becomes suddenly overactive, overtalkative, and elated in mood. In the depressed phase of this illness, the individual shows the exact reversal of what was seen in the manic phase.

Persons with this illness are attracted to alcohol. The medical testimony is to the effect that respondent's condition is aggravated by even the most moderate consumption. Complete abstinence, no doubt, would be beneficial.

We conclude that the respondent should be retired under the provisions of the Constitution, Article V, § 13. Family

court judges, by reason of § 14-21-495 of the 1976 Code (Supp. 1977), participate in the State Retirement System. Accordingly, he is entitled to the retirement benefits provided by this Code section.

By way of summary, we find that the respondent suffers a disability seriously interfering with the performance of his duties which is, or is likely to become, of a permanent character, and order that he be retired as of the date of the filing of this order, and receive benefits under the State Retirement System from that date.